

**American Center
*for* Law & Justice**

*Jay Alan Sekulow, J.D., Ph.D.
Chief Counsel*

February 23, 2017

National Security Agency
Attn: FOIA/PA Office
9800 Savage Road, Suite 6932
Ft. George G. Meade, MD 20755-6932
Facsimile: (443) 479-3612

RE: **FOIA Request to the National Security Agency Regarding Deliberations, Review and Approval of "Procedures for the Availability or Dissemination of Raw Signals Intelligence Information by the National Security Agency Under Section 2.3 of Executive Order 12333"**

Dear Sir or Ma'am:

This letter is a request ("Request") in accordance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the corresponding department/agency implementing regulations.

The Request is made by the American Center for Law and Justice ("ACLJ")[1] on behalf of its members. The ACLJ respectfully seeks expedited processing and a waiver of fees related to this Request as set forth in an accompanying memorandum.

To summarize, this Request seeks records pertaining to National Security Agency ("NSA") officials' input into the deliberations concerning the "Procedures for the Availability or Dissemination of Raw Signals Intelligence Information by the National Security Agency Under Section 2.3 of Executive Order 12333," their review of those procedures, their approval of those procedures, and their discussions with former Director of National Intelligence James Clapper who executed the procedures on December 15, 2016, and former Attorney General Loretta Lynch who executed the procedures on January 3, 2017, concerning the procedures and the timing of their completion and approval.

---

[1] The ACLJ is a not-for-profit 501(c)(3) organization dedicated to the defense of constitutional liberties secured by law. The ACLJ regularly monitors governmental activity and works to inform the public of such affairs. The ACLJ and its global affiliated organizations are committed to ensuring governmental accountability and the ongoing viability of freedom and liberty in the United States and around the world.

## Background

This Background provides certain relevant contextual information, to the extent known, that contributes to the reasonableness of the records sought, as contemplated by NSA FOIA regulation 32 CFR 299.2(a)(1).

According to the New York Times, "[i]n its final days, the Obama administration has expanded the power of the National Security Agency to share globally intercepted personal communications with the government's 16 other intelligence agencies before applying privacy protections."[2] On December 15, 2016, Director of National Intelligence James Clapper executed a document entitled "Procedures for the Availability or Dissemination of Raw Signals Intelligence Information by the National Security Agency Under Section 2.3 of Executive Order 12333."[3] On January 3, 2017, then-Attorney General Loretta Lynch executed this document, indicating her approval.

As reported by the New York Times, "[t]he new rules significantly relax longstanding limits on what the N.S.A. may do with the information gathered by its most powerful surveillance operations."[4] Authority for these new procedures derives from Executive Order 12333, last amended by President Bush in 2008, which provided:

> Elements of the Intelligence Community are authorized to collect, retain, or disseminate information concerning United States persons only in accordance with procedures established by the head of the Intelligence Community element concerned or by the head of a department containing such element and approved by the Attorney General, consistent with the authorities provided by Part 1 of this Order, after consultation with the Director.[5]

After President Bush's last amendment in 2008, "[i]t took another eight years to develop those rules."[6] The New York Times had first reported in 2014 that deliberations by Obama administration officials on developing these procedures were occurring.[7] But, apparently, the new procedures were not completed by Director of National Intelligence Clapper and approved by Attorney General Lynch until just weeks before the end of President Obama's tenure.

---

[2] Charlie Savage, *N.S.A. Gets More Latitude to Share Intercepted Communications*, NEW YORK TIMES (Jan. 12, 2017), https://www.nytimes.com/2017/01/12/us/politics/nsa-gets-more-latitude-to-share-intercepted-communications.html?_r=0.
[3] OFFICE OF THE DIR. OF NAT'L INTELLIGENCE, (U) PROCEDURES FOR THE AVAILABILITY OR DISSEMINATION OF RAW SIGNALS INTELLIGENCE INFORMATION BY THE NATIONAL SECURITY AGENCY UNDER SECTION 2.3 OF EXECUTIVE ORDER 12333 (RAW SIGINT AVAILABILITY PROCEDURES), *available at* https://www.documentcloud.org/documents/3283349-Raw-12333-surveillance-sharing-guidelines.html.
[4] Savage, *supra* note 2.
[5] Executive Order 12333 — United States Intelligence Activities, 46 Fed. Reg. 59941 (Dec. 4, 1981), *available at*, https://www.archives.gov/federal-register/codification/executive-order/12333.html; https://www.gpo.gov/fdsys/pkg/FR-2008-08-04/pdf/E8-17940.pdf.
[6] Savage, *supra* note 2.
[7] *Id.*

## Records Requested

For purposes of this Request, the term "record" means "any information" that qualifies under 5 U.S.C. § 552(f), and includes, but is not limited to, the original or any full, complete and unedited copy of any log, chart, list, memorandum, note, correspondence, writing of any kind, policy, procedure, guideline, agenda, handout, report, transcript, set of minutes or notes, video, photo, audio recordings, or other material. The term "record" also includes, but is not limited to, all relevant information created, stored, received or delivered in any electronic or digital format, e.g., electronic mail, instant messaging or Facebook Messenger, iMessage, text messages or any other means of communication, and any information generated, sent, received, reviewed, stored or located on a government *or private* account or server, consistent with the holdings of *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145 (D.C. Cir. 2016)[8] (rejecting agency argument that emails on private email account were not under agency control, and holding, "If a department head can deprive the citizens of their right to know what his department is up to by the simple expedient of maintaining his departmental emails on an account in another domain, that purpose is hardly served.").

For purposes of this Request, the term "briefing" includes, but is not limited to, any in-person meeting, teleconference, electronic communication, or other means of gathering or communicating by which information was conveyed to one or more person.

For purposes of this Request, the term "NSA official" includes, but is not limited to, any person who is (1) employed by or on behalf of the NSA in any capacity; (2) contracted for services by or on behalf of the NSA in any capacity; or (3) appointed by the President of the United States to serve in any capacity at the NSA, all without regard to the component or office in which that person serves.

**For purposes of this Request, and unless otherwise indicated, the timeframe of records requested herein is November 7, 2016, to January 20, 2017.**

Pursuant to FOIA, 5 U.S.C. § 552, the ACLJ hereby requests that the NSA produce the following within twenty (20) business days:

1. All records, communications or briefings created, generated, forwarded, transmitted, sent, shared, saved, received, or reviewed by NSA Director Michael S. Rogers, NSA Deputy Director Richard H. Ledgett, Jr., CSS Deputy Chief Mark W. Westergren, NSA Executive Director Corin R. Stone, and/or NSA Chief of Staff Natalie Laing, referencing, connected to, or regarding in any way section 2.3 of Executive Order 12333, as referenced in the Background section above, including but not limited to any record located on backup tapes, archives, any other recovery, backup, storage or retrieval system, NSA electronic mail or message accounts, non-NSA electronic mail or message accounts, personal electronic mail or message accounts, NSA servers, non-NSA servers, and personal servers, as well as any electronic mail or message carbon copied to agency account recipients, any electronic mail or message carbon copied to non-agency

---

[8] *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145 (D.C. Cir. 2016).

account recipients, any electronic mail or message forwarded to agency account recipients, any electronic mail or message forwarded to non-agency account recipients, and attachments to any electronic mail or message.

2. All records, communications or briefings created, generated, forwarded, transmitted, sent, shared, saved, received, or reviewed by NSA Director Michael S. Rogers, NSA Deputy Director Richard H. Ledgett, Jr., CSS Deputy Chief Mark W. Westergren, NSA Executive Director Corin R. Stone, and/or NSA Chief of Staff Natalie Laing, referencing, connected to, or regarding in any way their review of the procedures set forth in the document entitled "Procedures for the Availability or Dissemination of Raw Signals Intelligence Information by the National Security Agency Under Section 2.3 of Executive Order 12333," which the Director of National Intelligence executed on December 15, 2016, and which then-Attorney General Lynch approved on January 3, 2017, as referenced in the Background section above, including but not limited to any record located on backup tapes, archives, any other recovery, backup, storage or retrieval system, NSA electronic mail or message accounts, non-NSA electronic mail or message accounts, personal electronic mail or message accounts, NSA servers, non-NSA servers, and personal servers, as well as any electronic mail or message carbon copied to agency account recipients, any electronic mail or message carbon copied to non-agency account recipients, any electronic mail or message forwarded to agency account recipients, any electronic mail or message forwarded to non-agency account recipients, and attachments to any electronic mail or message.

3. All records, communications or briefings created, generated, forwarded, transmitted, sent, shared, saved, received, or reviewed by NSA Director Michael S. Rogers, NSA Deputy Director Richard H. Ledgett, Jr., CSS Deputy Chief Mark W. Westergren, NSA Executive Director Corin R. Stone, and/or NSA Chief of Staff Natalie Laing, referencing, connected to, or regarding in any way their input into the development of procedures set forth in the document entitled "Procedures for the Availability or Dissemination of Raw Signals Intelligence Information by the National Security Agency Under Section 2.3 of Executive Order 12333," which Director of National Intelligence Clapper executed on December 15, 2016, and which then-Attorney General Lynch approved on January 3, 2017, as referenced in the Background section above, including but not limited to any record located on backup tapes, archives, any other recovery, backup, storage or retrieval system, NSA electronic mail or message accounts, non-NSA electronic mail or message accounts, personal electronic mail or message accounts, NSA servers, non-NSA servers, and personal servers, as well as any electronic mail or message carbon copied to agency account recipients, any electronic mail or message carbon copied to non-agency account recipients, any electronic mail or message forwarded to agency account recipients, any electronic mail or message forwarded to non-agency account recipients, and attachments to any electronic mail or message.

4. All records, communications or briefings created, generated, forwarded, transmitted, sent, shared, saved, received, or reviewed by NSA Director Michael S. Rogers, NSA Deputy Director Richard H. Ledgett, Jr., CSS Deputy Chief Mark W. Westergren, NSA Executive Director Corin R. Stone, and/or NSA Chief of Staff Natalie Laing, referencing, connected to, or regarding in any way their approval of the procedures set forth in the document entitled "Procedures for the

Availability or Dissemination of Raw Signals Intelligence Information by the National Security Agency Under Section 2.3 of Executive Order 12333," which Director of National Intelligence Clapper executed on December 15, 2016, and which then-Attorney General Lynch approved on January 3, 2017, as referenced in the Background section above, including but not limited to any record located on backup tapes, archives, any other recovery, backup, storage or retrieval system, NSA electronic mail or message accounts, non-NSA electronic mail or message accounts, personal electronic mail or message accounts, NSA servers, non-NSA servers, and personal servers, as well as any electronic mail or message carbon copied to agency account recipients, any electronic mail or message carbon copied to non-agency account recipients, any electronic mail or message forwarded to agency account recipients, any electronic mail or message forwarded to non-agency account recipients, and attachments to any electronic mail or message.

5. All records, communications or briefings created, generated, forwarded, transmitted, sent, shared, saved, received, or reviewed by any NSA official referencing, connected to, or regarding in any way the input, review and approval of Director of National Intelligence Clapper and/or then-Attorney General Lynch as to the procedures set forth in the document entitled "Procedures for the Availability or Dissemination of Raw Signals Intelligence Information by the National Security Agency Under Section 2.3 of Executive Order 12333," which Director of National Intelligence James Clapper executed on December 15, 2016, and which Attorney General Lynch executed on January 3, 2017, as referenced in the Background section above, including but not limited to any record located on backup tapes, archives, any other recovery, backup, storage or retrieval system, NSA electronic mail or message accounts, non-NSA electronic mail or message accounts, personal electronic mail or message accounts, NSA servers, non-NSA servers, and personal servers, as well as any electronic mail or message carbon copied to agency account recipients, any electronic mail or message carbon copied to non-agency account recipients, any electronic mail or message forwarded to agency account recipients, any electronic mail or message forwarded to non-agency account recipients, and attachments to any electronic mail or message.

## CONCLUSION

As you are undoubtedly aware, President Obama's Freedom of Information Act Memorandum of January 21, 2009, declares:

> A democracy requires accountability, and accountability requires transparency. As Justice Louis Brandeis wrote, "sunlight is said to be the best of disinfectants." In our democracy, the Freedom of Information Act (FOIA), which encourages accountability through transparency, is the most prominent expression of a profound national commitment to ensuring an open Government. At the heart of that commitment is the idea that accountability is in the interest of the Government and the citizenry alike.
>
> The Freedom of Information Act should be administered with a clear presumption: In the face of doubt, openness prevails. The Government should not keep information confidential merely because public officials might be

embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears. Nondisclosure should never be based on an effort to protect the personal interests of Government officials at the expense of those they are supposed to serve. In responding to requests under the FOIA, executive branch agencies (agencies) should act promptly and in a spirit of cooperation, recognizing that such agencies are servants of the public.

All agencies should adopt a presumption in favor of disclosure, in order to renew their commitment to the principles embodied in FOIA, and to usher in a new era of open Government. The presumption of disclosure should be applied to all decisions involving FOIA.[9]

As such, if this Request is denied in whole or in part, ACLJ requests that, within the time requirements imposed by FOIA, you support all denials by reference to specific FOIA exemptions and provide any judicially required explanatory information, including but not limited to, a *Vaughn* Index.

Moreover, as explained in an accompanying memorandum, the ACLJ is entitled to expedited processing of this Request as well as a waiver of all fees associated with it. The ACLJ reserves the right to appeal a decision to withhold any information sought by this request and/or to deny the separate application for expedited processing and waiver of fees.

Thank you for your prompt consideration of this Request. Please furnish all applicable records and direct any responses to:

> Jay Alan Sekulow, Chief Counsel                sekulow@aclj.org
> Colby M. May, Senior Counsel                   cmmay@aclj-dc.org
> Craig L. Parshall, Special Counsel
> Benjamin P. Sisney, Senior Litigation Counsel  bsisney@aclj.org
> American Center for Law and Justice
> 201 Maryland Ave., NE
> Washington, D.C. 20002-5703
> (202) 546-8890
> (202) 546-9309 (fax)

---

[9] PRESIDENT BARACK OBAMA, MEMORANDUM FOR THE HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES RE: FREEDOM OF INFORMATION ACT (Jan. 21, 2009), *available at* https://www.whitehouse.gov/the_press_office/FreedomofInformationAct.

I affirm that the foregoing request and attached documentation are true and correct to the best of my knowledge and belief.

Respectfully submitted,

*[signature]*
Jay Alan Sekulow
Chief Counsel

*[signature]*
Colby M. May
Senior Counsel

*[signature]*
Benjamin P. Sisney
Senior Litigation Counsel



American Center
*for* Law & Justice

February 23, 2017

National Security Agency
Attn: FOIA/PA Office
9800 Savage Road, Suite 6932
Ft. George G. Meade, MD 20755-6932
Facsimile: (443) 479-3612

RE: **FOIA Request to National Security Agency Regarding Deliberations, Review and Approval of "Procedures for the Availability or Dissemination of Raw Signals Intelligence Information by the National Security Agency Under Section 2.3 of Executive Order 12333"**

## MEMORANDUM IN SUPPORT OF REQUESTED FEE WAIVER AND EXPEDITED PROCESSING

The American Center for Law and Justice ("ACLJ") respectfully submits this Memorandum in Support of Fee Waiver and Expedited Processing of its Freedom of Information Act Request ("FOIA") Request (hereinafter "Request") to the National Security Agency ("NSA").

### I.   FEE WAIVER REQUEST

The ACLJ is a not-for-profit 501(c)(3) organization dedicated to the defense of constitutional liberties secured by law. The ACLJ's mission is to educate, promulgate, conciliate, and where necessary, litigate, to ensure that those rights are protected under the law. The ACLJ regularly monitors governmental activity with respect to governmental accountability. The ACLJ stands for the principles of separation of powers, a strong national defense, and the sanctity of the individual liberties recognized and secured by the Constitution. The ACLJ and its globally affiliated organizations are committed to ensuring the ongoing viability of freedom and liberty in the United States and around the world. By focusing on U.S. constitutional law and international law, the ACLJ and its affiliated organizations are dedicated to the concept that freedom and liberty are universal, God-given, and inalienable rights that must be protected. Additionally, the ACLJ and its affiliated organizations support training law students from around the world in order to protect religious liberty and safeguard human rights and dignity.

The ACLJ requests a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii). Under this section, fees related to a FOIA request may be waived or reduced if the requester falls certain specified categories, which include a "representative of the news media," § (a)(4)(A)(ii)(II), and/or if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester," § (a)(4)(A)(iii). The ACLJ qualifies for a

fee waiver as a "representative of the news media," § (a)(4)(A)(ii)(II), and because the information sought is "not for a commercial purpose," § (a)(4)(A)(iii). Moreover, the ACLJ intends to widely disseminate to the public the information obtained because, as explained in detail *infra*, "it is likely to contribute significantly to the public understanding of the operations or activities of the government," § (a)(4)(A)(iii), including specifically the agency, and actors referenced in the Request.

### A. The ACLJ Qualifies as a News Media Representative.

The ACLJ qualifies as a "representative of the news media," as defined in 5 U.S.C. § 552(a)(4)(A)(ii), because the ACLJ, for the purposes explained above, "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *Id.* The ACLJ's audience is generally comprised of those interested in our mission and legal activities as described above. The ACLJ reaches a vast audience through a variety of media outlets, including the Internet (World Wide Web page, www.aclj.org), radio, television, press releases, and direct mailings to our supporters.

For example, the ACLJ's Internet site received an average of 822,000 unique visitors per month in 2015, with 22,000,000 page views. Our current email list holds 1,050,000 active names (actual list size is 2,340,690). In 2015, the ACLJ sent 278,000,000 emails.

The ACLJ's radio audience consists of more than 1,150,000 estimated daily listeners on 873 radio stations nationwide, including SiriusXM satellite radio. Additionally, the ACLJ hosts a weekly television program, *Sekulow*, broadcast on eight networks: Cornerstone Television, Daystar Television Network, AngelOne, KAZQ, TBN, VTN, The Walk TV, and HisChannel. *See* http://aclj.org/radio-tv/schedule (listing schedule).

The ACLJ also disseminates news and information to over 1,000,000 addresses on its mailing lists. In 2015, the ACLJ sent 15,000,000 pieces of mail.

Moreover, our Chief Counsel, Jay Sekulow, has regularly appeared on various news and talk show programs to discuss the issues and events important to the ACLJ and its audiences. These include shows on FOX News, MSNBC, CNN, ABC, CBS, and NBC. In addition to television programs, Jay Sekulow has also appeared on national radio broadcasts. Beyond broadcast outlets, Jay Sekulow's comments appear regularly in the nation's top newspapers, in print and online editions, including but not limited to the Wall Street Journal, New York Times, Washington Times, Washington Post, L.A. Times, and USA Today. His comments also appear in major national newswire services that include, but are not limited to, Associated Press, Reuters, and Bloomberg.

### B. The ACLJ's FOIA Request Meets Standards Set Forth Under NSA/DoD Regulations Promulgated Under FOIA.

Under 32 C.F.R. § 299.6, the NSA shall be grant a fee waiver or reduction of fees normally charged for processing FOIA requests "in accordance with DoD 5400.7-R and based on information provided by the requester." DoD 5400.7-R, section C6.1.4.1, grants a fee waiver

2

for processing FOIA requests,

> when the Component determines that waiver or reduction of the fees is in the public interest because furnishing the information is likely to contribute significantly to public understanding of the operations or activities of the Department of Defense and is not primarily in the commercial interest of the requester.

*Id.* The NSA considers the following factors under section C6.1.4 in determining "whether disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government":

> (i) whether the subject matter of the request involves issues that will significantly contribute to the public understanding of the operations or activities of the Department of Defense [NSA];
> (ii) whether disclosure is meaningful, and shall inform the public on the operations or activities of the Department of Defense [NSA].;
> (iii) whether disclosure will inform, or have the potential to inform the public, rather than simply the individual requester or small segment of interested persons; and,
> (iv) whether disclosure on a current subject of wide public interest be unique in contributing previously unknown facts, thereby enhancing public knowledge, or will it basically duplicate what is already known by the general public.

§ C6.1.4.2.1-4.

The NSA considers the following two factors under section C6.1.4.3.2 in determining "whether disclosure of the information is not primarily in the commercial interest of the requester":

> (i) The existence and magnitude of a commercial interest, i.e., whether the requester has a commercial interest that would be furthered by the requested disclosure; and, if so,
> (ii) The primary interest in disclosure, i.e., a balancing test between the commercial interest of the request against any public benefit to be derived as a result of that disclosure.

§ C6.1.4.3.2.1-2.

As the U.S. Court of Appeals for the D.C. Circuit has noted, "Congress amended FOIA to ensure that it is 'liberally construed in favor of waivers for noncommercial requesters.'" *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (citing *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (quoting 132 CONG. REC. 27, 190 (1986) (Sen. Leahy))).

3

The ACLJ's Request meets the NSA's factors as listed above, qualifying the ACLJ for a waiver of fees, as set forth below.

### § C6.1.4.3.1.1: The subject of the Request involves issues that will significantly contribute to the public understanding of the operations or activities of the Department of Defense (NSA).

Releasing the requested records to the ACLJ will contribute significantly to the public's understanding of United States Government operations and activities. The ACLJ has requested information and records specifically concerning decisions made and agreements reached by NSA officials leading to a major intelligence policy change just weeks before a new presidential administration was to begin. The Request seeks all records indicating what role NSA officials took in the making of this unusual decision and in the timing thereof, with whom and what they communicated leading up to this decision, and related records. Within this Request, all participation in such NSA briefings, meetings and communications by the NSA leadership and personnel, and all other NSA actions related thereto, are relevant to shed light on identifiable activities of the government.

### § C6.1.4.3.1.2: The requested information has significant informative value and disclosure is likely to inform the public on the operations or activities of the Department of Defense (NSA).

Records responsive to the ACLJ's Request will contribute to and provide meaningful understanding of United States Government operations or activities undertaken by and within the NSA. The Request will reveal records indicating why NSA officials made certain decisions leading to a major intelligence policy change just weeks before a new presidential administration was to begin. Responsive records will also reveal the involvement, if any, of any other governmental agencies or officials in these decisions. This information will allow the American public to hold its government officials accountable if it is discovered that NSA officials engaged in activities and/or communications and/or arrived at decisions in a manner inconsistent with the desires of the American public.

### § C6.1.4.3.1.3: Disclosure of the requested information will inform, or have the potential to inform the public, rather than simply the individual requester or small segment of interested persons.

The ACLJ intends to publicly release the information, once analyzed and assessed, through its numerous media outlets. Those outlets include but are not limited to its Internet website (www.aclj.org), email list, radio programs, television programs, press releases, and regular mailing list, as described above. The ACLJ has been disseminating relevant information concerning fundamental and constitutional freedoms, national security, and governmental accountability since its founding in 1990, and has since expanded its work and notoriety on an international level, achieving credibility in a wide range of media outlets, as described throughout this request.

4

The ACLJ has been heavily involved in researching and litigation aimed at upholding governmental transparency and accountability *and* policies integral to a strong national defense. The ACLJ is qualified to analyze and assess the adequacy and propriety of NSA officials' actions and decisions at issue.

Releasing the records responsive to the ACLJ's Request will significantly contribute to the public's understanding through ACLJ review and assessment of the materials and information, and subsequent dissemination of the information to the public. Such review, assessment, and dissemination will help the public understand what actions NSA officials took in making the decisions at issue and why the decisions were made. Again, the ACLJ is well versed in disseminating relevant information concerning fundamental and constitutional freedoms, national security, and governmental and has credibility in a wide range of media outlets.

### § C6.1.4.3.2.1: The requester has no commercial interest that would be furthered by the requested disclosure.

The ACLJ has no commercial interest in the information sought or its dissemination thereof. The ACLJ is a not-for-profit 501(c)(3) organization dedicated to the defense of constitutional liberties secured by law. The information sought by the ACLJ is in furtherance of its not-for-profit mission statement. As the ACLJ does not and cannot have a commercial interest in the requested records, its interest therein cannot be founded "primarily" in a commercial interest. This is especially so because the ACLJ cannot operate for a commercial purpose under its grand of 501(c)(3) tax-exempt status.

### § C6.1.4.3.2.2: The requester's primary and in fact, only, interest in disclosure of the requested information is non-commercial.

Again, the ACLJ has *no* commercial interest in the information sought or its dissemination thereof. Rather, its interest is purely to further its not-for-profit mission. Therefore, its interest cannot be founded "primarily" in a commercial interest. The ACLJ *cannot* operate for a commercial purpose under its grant of 501(c)(3) tax-exempt status.

For these reasons, the ACLJ is entitled to a fee waiver and respectfully requests that a waiver be granted.

## II. EXPEDITED PROCESSING REQUEST

The ACLJ seeks expedited processing of its request under 5 U.S.C. § 552(a)(6)(E), and the NSA's attendant regulation, 32 C.F.R. 299.5(f). As defined by statute, a "compelling need" is one

> (I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or

(II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

5 U.S.C. § 552(a)(6)(E)(v) (emphasis added). The NSA's regulation provides the nearly identical definition when defining the determination that must be made when qualifying a FOIA for expedited processing, under 32 C.F.R. 299.5(f)(2):

(2) The information is urgently needed by an individual primarily engaged in disseminating information to inform the public about actual or alleged Federal Government activity. Urgently needed means that the information has a particular value that will be lost if not disseminated quickly.

*Id.* (emphasis added).

Pursuant to 5 U.S.C. § 552(a)(6)(E)(v)(II), 32 C.F.R. 299, and DoD 5400.7-R, the ACLJ is "primarily engaged in disseminating information," though it is not the requester's sole occupation. As detailed above under Section I(A) (concerning the ACLJ's qualification as a news media representative):

(1) The ACLJ reaches a vast audience through a variety of media outlets, including the Internet (World Wide Web page, www.aclj.org), radio, television, press releases, and direct mailings to our supporters.
(2) The ACLJ's Internet site received an average of 822,000 unique visitors per month in 2015, with 22,000,000 page views. Our current email list holds 1,050,000 active names (actual list size is 2,340,690). In 2015, the ACLJ sent 278,000,000 emails.
(3) The ACLJ's radio audience consists of more than 1,150,000 estimated daily listeners on 873 radio stations nationwide, including SiriusXM satellite radio. Additionally, the ACLJ hosts a weekly television program, *Sekulow*, broadcast on eight networks: Cornerstone Television, Daystar Television Network, AngelOne, KAZQ, TBN, VTN, The Walk TV, and HisChannel. *See* http://aclj.org/radio-tv/schedule (listing schedule).
(4) The ACLJ also disseminates news and information to over 1,000,000 addresses on its mailing lists. In 2015, the ACLJ sent 15,000,000 pieces of mail.
(5) ACLJ Chief Counsel, Jay Sekulow, has regularly appeared on various news and talk show programs to discuss the issues and events important to the ACLJ and its audiences. These include shows on FOX News, MSNBC, CNN, ABC, CBS, and NBC. In addition to television programs, Jay Sekulow has also appeared on national radio broadcasts. Beyond broadcast outlets, Jay Sekulow's comments appear regularly in the nation's top newspapers, in print and online editions, including but not limited to the Wall Street Journal, New York Times, Washington Times, Washington Post, L.A. Times, and USA Today. His comments also appear in major national newswire services that include, but are not limited to, Associated Press, Reuters, and Bloomberg.

6

The U.S. District Court for the District of Columbia found that a non-profit public interest group, not unlike the ACLJ, qualified as a "representative of the news media" where the group disseminated an electronic newsletter and published books. *Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5, 10-15 (D.D.C. 2003).

Clearly, the ACLJ satisfies the requirement of being one "whose primary professional activity or occupation is information dissemination." 28 C.F.R. § 16.5(e)(3).

The ACLJ's Request qualifies as compelling under the second statutory definition stated above as well as under the NSA's regulations because it has an urgency to inform the public about United States government activity in connection with its decision to significantly change and expand intelligence policy just weeks before a new presidential administration was to begin. "The information has a particular value that will be lost if not disseminated quickly," 32 C.F.R. § 299.5(f)(2), because these issues are currently being reported and are currently before the public. As one district court recently explained, the required "compelling need" and "urgency to inform" are determined by three factors:

> (1) [W]hether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity.

*ACLU v. United States DOJ*, 321 F. Supp. 2d 24, 29 (D.D.C. 2004) (citing *Al-Fayed v. CIA*, 254 F.3d 300, 310 (2002)).

Such is the case presented by the ACLJ's Request. The ACLJ's Request is based upon an urgency to inform the American public because a delay in review of the information would compromise the ability of the American people to know about and influence current and pending U.S. Government actions concerning the former administration's last-minute expansion of access to raw intelligence information. As referenced in the Request, which is incorporated by reference as if fully set forth herein, the press is currently reporting on these very issues.

Without the immediate release of the records requested, the American public will remain in the dark with respect to its own government's decisions to fundamentally expand access to raw intelligence information. These concerns are also heightened by the fact that the U.S. Government officials who made the controversial decisions at issue are no longer in leadership. Moreover, due to leaking of classified information that appears to continue, a delay in releasing the information endangers national security and individual rights, and harms the public trust in government leadership. An expedited response will allow the NSA to swiftly disprove the harmful and damaging assumptions such secretive behavior engenders, to wit, that these decisions were politically motivated. The requested documents must be released *now* so that the American people can decide for themselves whether the government's decisions were acceptable and its response is adequate.

7

\* \* \* \* \*

As noted in the ACLJ's Request, President Obama's Freedom of Information Act Memorandum of January 21, 2009, declares that accountability and openness ought to prevail with regard to FOIA requests:

> A democracy requires accountability, and accountability requires transparency. As Justice Louis Brandeis wrote, "sunlight is said to be the best of disinfectants." In our democracy, the Freedom of Information Act (FOIA), which encourages accountability through transparency, is the most prominent expression of a profound national commitment to ensuring an open Government. At the heart of that commitment is the idea that accountability is in the interest of the Government and the citizenry alike.
>
> The Freedom of Information Act should be administered with a clear presumption: In the face of doubt, openness prevails. The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears. Nondisclosure should never be based on an effort to protect the personal interests of Government officials at the expense of those they are supposed to serve. In responding to requests under the FOIA, executive branch agencies (agencies) should act promptly and in a spirit of cooperation, recognizing that such agencies are servants of the public.
>
> All agencies should adopt a presumption in favor of disclosure, in order to renew their commitment to the principles embodied in FOIA, and to usher in a new era of open Government. The presumption of disclosure should be applied to all decisions involving FOIA.[1]

Accordingly, the ACLJ respectfully submits a request for waiver of fees and expedited processing of its contemporaneously submitted FOIA Request.

---

[1] PRESIDENT BARACK OBAMA, MEMORANDUM FOR THE HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES RE: FREEDOM OF INFORMATION ACT (Jan. 21, 2009), *available at* https://www.whitehouse.gov/the_press_office/FreedomofInformationAct.

## III. CERTIFICATION

In satisfaction of certification requirements under 5 U.S.C. § 552(a)(6)(E)(vi) and corresponding regulations, and in support thereof, the ACLJ incorporates by reference herein all relevant facts and information as stated in the ACLJ's FOIA Request and certifies that the information provided and stated herein is true and correct to the best of the undersigned's knowledge and belief.

| | |
|---|---|
| *[signature]* | *[signature]* |
| Colby M. May | Benjamin P. Sisney |
| Senior Counsel | Senior Litigation Counsel |
| American Center for Law and Justice | American Center for Law and Justice |
| 201 Maryland Avenue, NE | 201 Maryland Avenue, NE |
| Washington, DC  20002-5703 | Washington, DC  20002-5703 |
| (202) 546-8890 | (202) 546-8890 |
| (202) 546-9309 fax | (202) 546-9309 fax |
| cmmay@aclj-dc.org | bsisney@aclj.org |